IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO. 3:25-CR-00022-KDB-SCR

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY DION TRIBBLE,<br><br>Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Anthony Tribble's Motion to Suppress (Doc. No. 16). The Court has carefully considered this motion, the parties' briefs and exhibits and oral argument on the motion from the parties' counsel on August 6, 2025. For the reasons discussed below, the Court will **DENY** the motion.

### I. LEGAL STANDARD

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, rather than "proscrib[ing] all contact between the police and citizens," the Fourth Amendment "prevent[s] arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuente*, 428 U.S. 543, 554 (1976)). The ultimate touchstone of the Court's analysis is whether a search is "reasonable under the circumstances." *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016) (citing *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)).

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment and [therefore] must be reasonable under the circumstances." *Id.* (citing *Prouse*, 440 U.S. at 653-54). Specifically, a police officer may conduct a brief investigatory stop of a vehicle, when the "officer has a reasonable, articulable suspicion that criminal activity is afoot."[1] *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S.1, 30 (1968)). To review the constitutionality of a traffic stop, courts use the two-prong standard from *Terry*. First, the Court must determine whether it was lawful for police to "detain [the] automobile and its occupants pending inquiry into a vehicular violation." *Palmer*, 820 F.3d at 649 (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). "Without question," failure to comply with traffic laws provides sufficient justification to stop a vehicle. *Id.* (citing *United States v. Green*, 740 F.3d 275, 279 n.1 (4th Cir. 2014)).

Second, the Court assesses whether the stop is "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Id.* (quoting *United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011)). Importantly, an officer may not "investigate 'a matter outside the scope of the initial stop' unless he receives the motorist's consent or develops reasonable, articulable suspicion of ongoing criminal activity." *Id.* at 649-50 (quoting *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011)). But "in connection with such a seizure or stop, if presented with a reasonable belief that the person may be armed and presently dangerous, an officer may conduct a protective frisk." *United States v. Black*, 525 F.3d 359, 364 (4th Cir. 2008)

---

[1] Reasonable suspicion, "a less demanding standard than probable cause," requires officers to have "at least a minimal level of objective justification for making the stop." *United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023) (quoting *Wardlow*, 528 U.S. at 123). In short, it must be "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000) (quoting *Terry*, 392 U.S. at 27) (internal quotations omitted).

In assessing whether a *Terry* stop was supported by reasonable, articulable suspicion, a court must consider the "totality of the circumstances ... to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Mobley*, No. 317CR00279MOCDCK, 2018 WL 2304047, at *1 (W.D.N.C. May 21, 2018) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotation marks and citation omitted). "Thus, factors which by themselves suggest only innocent conduct may amount to reasonable suspicion when taken together." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004). While an officer's "hunch" will not justify a stop, courts "give due weight to common sense judgments reached by officers in light of their experience and training." *Mobley,* 2018 WL 2304047, at *1 (first quoting *Terry*, 392 U.S. at 27, then quoting *Perkins*, 363 F.3d at 321).

## II. FACTS AND PROCEDURAL HISTORY

At approximately 8:23 p.m. on November 20, 2024,[2] Officer Heins of the Charlotte Mecklenburg Police Department observed a black Acura (later identified as belonging to and being driven by Mr. Tribble) with a license plate frame that obscured the name of the state. Doc. No. 16-1 at 9. At the suppression hearing, Officer Heins testified that he then ran the plate number through a law enforcement database called "CJLEADS." He explained that CJLEADS provides law enforcement with information on the criminal history of the registered owner of a given plate. Officer Heins also testified that in this circumstance, CJLEADS returned three "red" indicators pertaining to Mr. Tribble: "FEL," which signifies a previous felony conviction; "ASLT," which signifies a previous assault charge (but does not detail whether a conviction or dismissal occurred);

---

[2] Officer Heins testified that on this date, he was assigned to the "Core 13 Initiative," a proactive policing effort targeting areas in Mecklenburg County with high rates of violent crime, including the location where he stopped Mr. Tribble's vehicle. He also explained traffic stops help advance the Initiative by reinforcing a visible police presence in those areas.

3

and "WP," which signifies a previous arrest for a weapons charge (but again, does not detail whether a conviction or dismissal occurred). At some point after running the plate through CJLEADS, but before initiating the traffic stop, Officer Heins radioed dispatch for backup, explaining that he would be conducting a traffic stop on a vehicle that CJLEADS flagged as being owned by someone with a previous weapons charge. *See.* Doc. No. 16-1 at 2. This was ultimately communicated to Sergeant Potter, who responded to the call. *Id.*

Officer Heins then activated his body worn camera ("BWC") and siren to initiate the traffic stop. After Mr. Tribble pulled over to the side of the road, Officer Heins instructed him via speaker to "roll down all four of those darkly tinted windows." Heins BWC (20:24:29). He then exited his patrol vehicle and approached Mr. Tribble, who was seated in the driver's seat and had rolled down all windows as directed (indeed, Mr. Tribble was cooperative throughout the encounter). *Id.* at (20:24:41). Officer Heins identified himself and explained the stop was due to a "frame cover on the back of your license plate and it's covering up the entire name of the state." *Id.* at (20:24:48-54). He added that, provided Mr. Tribble had a valid driver's license, he would simply issue him a warning. *Id.* at (20:25:12-14). During the exchange, Sergeant Potter arrived on the scene to provide backup. Potter BWC (20:24:53).

Mr. Tribble told Officer Heins he didn't have his actual license on him but offered his registration. Heins BWC (20:25:16). While looking for the registration, Officer Heins asked Mr. Tribble whether he had any firearms in his vehicle. Mr. Tribble stated, "no, sir." *Id.* at (20:25:23-28). Officer Heins also asked whether Mr. Tribble had any other marijuana in the car "besides what I am smelling."[3] *Id.* at (20:25:29-41). In response, Mr. Tribble held up an ashtray, containing

---

[3] Both Officer Heins and Sergeant Potter described—in their reports and during the suppression hearing—smelling a strong odor of what they believed, in their experience and training, to be marijuana emanating from the vehicle.

what Officer Heins called "roaches." *Id.* At the same time, Officer Heins observed "some shake … on the [driver's side] floorboard." *Id.*

Officer Heins directed Mr. Tribble to exit the vehicle. As he complied, the Officers observed that he did so in a slow, "hunched-over" manner, exhibiting "stiff" movements. Doc. No. 16-1 at 2, 9. The Officers testified that in their training and experience, such behavior was indicative of an individual who was likely armed and attempting to conceal it. Accordingly, Officer Heins informed Mr. Tribble that a frisk would be conducted. Heins BWC (20:26:08-31). Once fully outside of the vehicle, Sergeant Potter immediately frisked the outside of Mr. Tribble's front hoodie pocket, calling out "94" to Officer Heins. Potter BWC (20:26:32). Both Officer Heins and Sergeant Potter (collectively, "Officers") later testified that "94" is police code for the presence of a firearm. After handcuffing Mr. Tribble, and removing and securing the firearm, (Heins BWC (20:26:34-27:36); Doc. No. 16-1 at 7), Mr. Tribble was placed under arrest. Heins BWC at (20:39:55).

On February 19, 2025, Mr. Tribble was indicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g)(1). *See* Doc. No. 1. He filed a motion to suppress in June 2025, and the Court held a suppression hearing on August 6, 2025. The matter is now ripe for this Court's review.

### III. DISCUSSION

Mr. Tribble asks the Court to suppress all evidence discovered during the traffic stop on November 20, 2024, alleging his Fourth Amendment rights were violated because police lacked the reasonable suspicion necessary to conduct the traffic stop and *Terry* frisk.

1. **The Initial Stop**

Mr. Tribble first alleges Officer Heins did not have reasonable suspicion for the traffic stop because (1) he was able to identify the numbers on Mr. Tribble's license plate and recognized the plate design as being from North Carolina, (2) the plate frame that triggered the stop was not placed by Mr. Tribble, and (3) Officers failed to preserve an image of the license plate from the traffic stop. The Court disagrees.

"When an officer observes a traffic offense—however minor—he has probable cause [and thereby more than a reasonable suspicion] to stop the driver of the vehicle." *Allen v. Coffey*, No. 5:20-CV-144-BO, 2021 WL 3684247, at *3–4 (E.D.N.C. Aug. 18, 2021), *aff'd,* No. 21-1934, 2022 WL 34152 (4th Cir. Jan. 4, 2022) (quoting *United States v. El*, 5 F.3d 726, 730 (4th Cir. 1993)) (additional citations omitted). Here, the pleadings and the documents of record show Officer Heins had at least a reasonable suspicion to believe Mr. Tribble had committed a violation of N.C. Gen. Stat. § 20-63(g) when he observed him driving with a plate frame obscuring the state name. Specifically, § 20-63(g) makes illegal certain actions by motor vehicle operators which alter, disguise, or conceal certain parts of a license plate. The statute states, in relevant part, "[a]ny operator of a motor vehicle who covers any registration plate with any frame … that makes the State name on the plate … illegible commits an infraction and shall be penalized under [N.C. Gen. Stat. § 14-3.1]. And, in North Carolina, "[w]here an officer observes that a license plate is obscured [in violation of § 20-63(g)], that circumstance would give rise to a reasonable … suspicion that a traffic offense has occurred." *Mobley,* 2018 WL 2304047, at *3.

Mr. Tribble's argument that because the plate *number* was "visible, readable, and legible," it was unreasonable for Officer Heins to conduct a traffic stop, is unpersuasive. *See* Doc. No. 16 at 10. Legibility of the plate number does not excuse the infraction of driving with the *state name*

obscured, nor does a driver's responsibility for complying with state law lessen simply because a police officer can correctly guess the state name or recognize the design of the plate. The Court finds it entirely reasonable for an officer to conduct a traffic stop after concluding a license plate frame covers nearly all of a state's name—thereby rendering it illegible and unlawful under § 20-63(g).

Similarly, the Court rejects Mr. Tribble's contention that a traffic stop is proper only if the operator personally installed the frame (or that Officer Heins should have aborted the traffic stop when he saw the frame had a dealership logo on it). If that were the rule, the relevant portion of § 20-63(g) could never be enforced because an officer would not know who placed the frame until after initiating the stop. Further, drivers could easily evade liability by blaming another party for the frame (such as a dealership or their spouse). This argument thus neglects the intent of the statute,[4] and misinterprets "operator of a motor vehicle who covers," as requiring drivers to have themselves physically installed the frame. Significantly, the portion of the statute triggering the traffic stop contains the only sentence in § 20-63(g) not explicitly requiring willful or intentional conduct for liability to attach. Thus, the Court finds any "operator … who covers" and makes illegible, the state name, whether intentionally or inadvertently through another party's actions, violates the statute. Consequently, it is reasonable for an officer to presume a vehicle's operator placed or consented to the placement of such a frame and to conduct a traffic stop to investigate.

Finally, Mr. Tribble argues the Officers "failed to provide … a clear picture of the license plate on the night of the stop," in violation of the Charlotte Mecklenburg Police Department's "normal practice" of "sav[ing] and maintain[ing] all information relating to a felony case." Doc.

---

[4] § 20-63(g) appears to be aimed at ensuring vehicle operators maintain license plates with clearly visible, unaltered numbers, registration tags, and state names (by means of a penalty under § 14-3.1 when they don't), allowing law enforcement and other drivers to read them accurately.

No. 16 at 10. He claims this "deprived the [C]ourt from reviewing the best evidence available." *Id.* at 11. However, as explained during the suppression hearing, the body-worn camera footage clearly shows the frame obscuring nearly the entire "North Carolina" inscription, leaving only a narrow band of red visible and effectively rendering the state name illegible, even if not completely covered. *See* Heins BWC at (20:56:00, 20:56:09, 20:56:10). The Court, by its own viewing of the BWC, finds as fact that the plate cover rendered the state name on the plate "illegible," in that it could not be read. Therefore, any failure of the Officers to take a separate photograph is not dispositive. In sum, the Court finds the stop was justified by reasonable suspicion of a traffic infraction at its inception and did not violate Mr. Tribble's Fourth Amendment rights.

### 2. **The Frisk**

Mr. Tribble next alleges the Officers performed an unlawful *Terry* frisk because (1) the traffic stop was unlawful and (2) the Officers did not reasonably suspect he was armed and dangerous. Doc. No. 16 at 11. For the reasons already stated, the traffic stop was lawful, and the only remaining issue is whether the Officers reasonably suspected Mr. Tribble was armed and dangerous. The Court finds that they did.

For a frisk to be lawful during a traffic stop, "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Johnson,* 555 U.S. at 327. When an "officer has a reasonable suspicion that illegal drugs are in [a] vehicle, the officer may ... order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998). Importantly, "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27. Lawfulness is "measured by the totality of the

circumstances" and "what the officers knew before they conducted the search." *Id.* (first quoting *Arvizu,* 534 U.S. at 273, then quoting *Florida v. J.L.,* 529 U.S. 266, 271 (2000)).

Here, both Officer Heins and Sergeant Potter testified they smelled the odor of (and Officer Heins observed) what they, based on their years of training and experience as police officers, believed to be marijuana. What's more, when Officer Heins asked Mr. Tribble if there was marijuana in the car *other* than what he was smelling, Mr. Tribble retrieved an ashtray from the center cup holder area of the vehicle and showed him the contents. Heins BWC (20:25:29-41). Notably, he did not deny the presence of marijuana in the car or in the ashtray. Nor did he attempt to claim the odor or roaches visible in the ashtray were anything other than marijuana.

However, Mr. Tribble now argues that because hemp is legal in North Carolina and purportedly looks and smells the same as marijuana, odor alone is an insufficient basis for a *Terry* frisk.[5] Even if that were true, which again, this Court does not determine, it is irrelevant, because several additional factors contributed to the Officers' decision to conduct a protective frisk.

---

[5] While this Court takes no position on the merits of such an argument, it notes that numerous federal and North Carolina state courts have considered the issue since hemp was legalized (albeit generally in the context of a challenge to a vehicular search) and reinforced that odor alone is a sufficient basis for probable cause to believe marijuana is present in a particular place. *See, e.g., United States v. Nelson*, 535 F. Supp. 3d 529, 532 n.2 (S.D.W. Va. 2021); *United States v. Boggess*, 444 F. Supp. 3d 730, 737 (S.D.W. Va. 2020); *United States v. Torres*, No. 1:24-CR-2, 2024 WL 4451760, at *18 (N.D.W. Va. July 2, 2024); *United States v. Heard*, No. 5:21-CR-00178-M-1, 2023 WL 4553608, at *4 (E.D.N.C. July 14, 2023); *United States v. Atkins*, No. 1:19-CR-455-1, 2020 WL 1274136, at *4 (M.D.N.C. Mar. 17, 2020); *United States v. Harris*, No. 4:18-CR-57-FL-1, 2019 WL 6704996, at *3 (E.D.N.C. Dec. 9, 2019); *United States v. Orr*, No. 3:23-CR-00208-FDW-SCR, 2025 WL 572887 (W.D.N.C. Feb. 21, 2025); *State v. Little*, 905 S.E.2d 907, 918 (N.C. Ct. App. 2024); *State v. Sturdivant*, 296 N.C. App. 555, (2024).
 Indeed, as recently as July 2025, the North Carolina Court of Appeals affirmed odor alone suffices for probable cause, because "probable cause does not turn on actual innocence or guilt, [thus] it does not follow that the possibility of confusing marijuana with hemp prevents the existence of probable cause of marijuana possession. *Matter of J.B.P.*, No. COA23-269, 2025 WL 1812404, at *5 (N.C. Ct. App. July 2, 2025) (citing *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)) (stating "innocent behavior frequently will provide the basis for a showing of probable cause").

At the outset, both officers were working as part of a task force designed to promote a police presence and reduce violent crime in high crime areas, including the area of the traffic stop. In addition, Officer Heins knew Mr. Tribble had a previous felony conviction, along with prior weapons and assault charges, and at minimum, Sergeant Potter knew Mr. Tribble had a previous weapons charge. While Mr. Tribble's criminal history "is not, standing alone, sufficient to create reasonable suspicion," it can be one of several factors that, under the totality of the circumstances, contributed to it. *United States v. Evans*, 722 F. Supp. 3d 607, 616 (W.D.N.C. 2024) (quoting *United States v. Foster*, 634 F.3d 243, 247 (4th Cir. 2011)) (additional citations omitted).

Further, as the Officers observed during the suppression hearing (and in their reports), Mr. Tribble exited his vehicle slowly, awkwardly, and hunched over at the waist. Both officers testified that, based on their experience and training, Mr. Tribble's manner of exit suggested he was likely attempting to conceal a weapon at his waist. The Court's review of the BWC confirms the officers' description. Certainly, as soon as Mr. Tribble stood up straight, a bulge in his hoodie pocket was visible on the body worn camera. *See* Potter BWC (20:26:31). Sergeant Potter likely noticed this as well; he testified the protective frisk targeted that area first. And, upon frisking, he immediately called out "94," which he later testified is police code for the presence of a firearm. *See* Potter BWC (20:26:32-33).

Therefore, under the totality of the circumstances, which included the odor of marijuana, Mr. Tribble's implicit admission that he had marijuana in the car, his criminal history, the awkward way he exited the vehicle, and the high crime area, the Officers had ample reasonable suspicion to justify a protective frisk. In summary, the Court finds Officer Heins had reasonable suspicion to conduct the initial traffic stop. The Court also finds the Officers had reasonable suspicion that Mr.

Tribble might be armed and dangerous and were thus permitted to conduct a protective frisk. Accordingly, the Court will deny the Motion to Suppress.

## II. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Defendant's Motion to Suppress (Doc. No. 16) is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 13, 2025

Kenneth D. Bell
United States District Judge